THE STATE OF OHIO, APPELLEE, *v.* CRAWFORD, APPELLANT.

[Cite as State v. Crawford, 14 Ohio App. 2d 41.]

(No. 10419—Decided March 18, 1968.)

*Mr. Melvin G. Rueger,* prosecuting attorney, and *Mr. Carl W. Vollman,* for appellee.

*Mr. Bernard J. Gilday, Jr.,* for appellant.

SHANNON, J. On August 5, 1966, police officers possessing search warrants visited two separate places of business operated by defendant After a search of both premises, defendant was placed under arrest on a charge of receiving stolen goods, although the searches yielded nothing.

The police proposed to search a third location, where defendant lived, in an effort to find the chattels described in the search warrants, particularly a quantity of canvas shoes. After a conversation with defendant concerning the obtaining by the police of another search warrant, they proffered to him a form denominated "Consent to Search," which defendant subsequently signed.

Thereafter, the residence was visited in the company of defendant. After a fruitless search of the first floor, the defendant accompanied the officers to the second floor and opened a door to admit them. It is conceded that defendant stated, "You will find what you want and what you are looking for now." Inside, the police recovered, among other things, a large quantity of canvas shoes.

Subsequently, defendant was indicted for receiving and concealing one hundred and ninety-two pairs of shoes stolen from a freight company. Pretrial motions to suppress were overruled, and, upon trial, the court admitted into evidence photographs of the cartons containing canvas shoes found in defendant's home. A jury having been waived, the court found the defendant guilty of receiving and concealing stolen goods of the value of $375 dollars and pronounced sentence according to law. The defendant neither testified himself nor did he offer evidence in his defense.

This appeal presents as a primary question the validity of the search of defendant's residence.

Since no search warrant was sought, we must determine whether the defendant freely and voluntarily consented to such search by signing the form, "Consent to Search."

It is true, as defendant contends, that his premises could not have been searched, over his objection, without a warrant. However, it is equally true, as the state urges, that the defendant may waive his constitutional protection by consenting to the search.

The defendant, in the case before us, apparently is a successful business man of considerable wealth and substance, judging from the statements of counsel made in his behalf. In fact, he was said to be "gifted, capable, competent, intelligent and well-established." After his places of business had been searched, the defendant supplied police with his residence address. At that time, it is clear, he was fully aware that the authorities were seeking to locate property alleged to have been stolen, particularly canvas shoes. When the question of the search of the residence

arose and was discussed, defendant was supplied the form, "Consent to Search," retired from the presence of the officers after reading it with the statement that he wished to call his attorney, returned shortly and declared that "I can't contact my attorney but you don't have to get a search warrant. I will sign it."

When the parties reached the defendant's residence, he assisted in the search and opened up the rooms. Although he was described as "scared," "nervous" and "obviously under a lot of tension," he "conducted himself as a gentleman and tried to cooperate in every way that he could."

The judge who heard and determined the motion to suppress evidence and the trial judge who ruled on the reconsideration of that motion found nothing to substantiate defendant's claim that the presence of "six or more" police officers, his arrest and the existence of the "Consent to Search" coerced him into signing the form, that is, that it was "the despairing act of a frightened man." Nor do we. In fact, all the evidence is to the contrary. The conclusion that the defendant knew that he was caught "with the goods" is inescapable; obviously, he realized that it was only a matter of time before the contraband would be found and decided further evasion would be useless.

In signing the "Consent to Search," defendant acknowledged that he knew he had a constitutional right not to have a search made of the premises without a warrant, that he had a right to refuse to consent to a search, and that he was authorizing officers to conduct a complete search and to remove property thereafter. These rights and the consequences of his granting authority to search are clearly set forth in the form. Defendant was advised as he must be.

When consent to search is given, as it was here, probable cause to search need not exist. The defendant knew what the officers were seeking and where they sought to find it. He intelligently and intentionally granted them authority to carry out their announced desire.

Defendant's second assignment of error is without

44

merit. There was sufficient testimony and evidence before the trial court, which, if credible, would support the court's announced conclusion. We agree with the findings of the court below.

No error prejudicial to defendant having been shown to exist, the judgment of the Court of Common Pleas of Hamilton County is affirmed.

*Judgment affirmed.*

LONG, P. J., and HILDEBRANT, J., concur.